**Sidney Rahim SHARIF, Plaintiff,**

v.

**CITY OF CHICAGO, an Illinois municipal corporation; et al., Defendants.**

**Civ. A. No. 81 C 7308.**

United States District Court,
N. D. Illinois, E. D.

Jan. 21, 1982.

---

**8.** The sum of $2,875.65 represents $2,860.00 attorney's fees for 35.75 hours at $80.00 per hour and $15.65 costs reasonably expended.

Matthew J. Piers, James P. Chapman, Jerry A. Esrig, James P. Chapman & Associates, Ltd., Chicago, Ill., for plaintiff.

Joseph M. Gagliardo, Asst. Corp. Counsel, Chicago, Ill., for defendants.

## PRELIMINARY INJUNCTION

SHADUR, District Judge.

Plaintiff Sidney Rahim Sharif ("Sharif") has filed a Complaint in this action seeking a preliminary injunction and other relief. This Court has conducted an evidentiary hearing during which Sharif testified (both to confirm the allegations of the Complaint and as to other issues) and the parties entered into a number of stipulations as to the documents attached to the Complaint. This Court has also considered the motion and memorandum of law filed on Sharif's behalf, the arguments of and cases cited by counsel for the parties and the Rules of Procedure of the Chicago Police Board (the "Board"), the Findings and Decision of the Board, and the complaint and the order of July 6, 1981 in the case of *Daniels v. City of Chicago, et al.* (Circuit Court of Cook County, Illinois No. 81 CH 5240). Based on all of the foregoing, the Court finds and concludes that:

1. This Court has jurisdiction of this action under 42 U.S.C. § 1983 and 28 U.S.C. §§ 1331 and 1343.

2. Sharif gave proper notice of the hearing for preliminary injunction to all defendants. All defendants (the City of Chicago [the "City"] generally, and all other defendants solely in their respective official capacities) have appeared through counsel.

3. Sharif has met his burden of proof in his presentation of evidence in the hearing for a preliminary injunction, and there is a reasonable basis to believe and to conclude in fact and law that:

(a) Sharif is a member of the Chicago Police Department (the "Department") holding the rank of Detective.

(b) Since 1970 Sharif has been a practicing member of the Al-Islamic religion in the religious community known as the American Muslim Mission. For the last two years, Sharif has been an Imam (prayer leader or minister) in the American Muslim Mission.

(c) Defendants Wilbur Daniel, Saul Epton, Norval Morris, Justin A. Stanley, Ann Ida Gannon, Nancy Jefferson, Marshall Korshak, David Cintron, and Frances Zemans are members of the Board, appointed by the Mayor of the City. Under the City's Municipal Code (the "Code"), the Board is created and empowered to (Code §§ 11–3.2 and 4):

Adopt rules and regulations for the governance of the police department of the city.

\*     \*     \*     \*     \*     \*

Serve as a board to hear disciplinary actions for which a suspension for more than 30 days expressly reserved to the Superintendent is recommended, or removal or discharge involving officers and employees of the police department in the classified and civil service of the city.

(d) Defendant Richard Brzeczek ("Brzeczek") is the City's Superintendent of Police serving as the Department's chief executive officer with responsibility for its general management, control and administration. Under Code §§ 11–3 and 11–5 Brzeczek has the power to suspend any police officer for up to 30 days without a prior hearing. Defendant William Murphy ("Murphy") is an officer of the Department with the rank and assignment of Commander of the Detective Division of Area One. Defendant John Hensley ("Hensley") is an officer of the Department with the rank of Lieutenant and assignment of Commanding Officer of the Violent Crimes Section of Area One. Defendant Michael Hoke ("Hoke") is an officer of the Department with the rank and assignment of Sergeant in the Violent Crimes Section of Area One.

(e) Pursuant to their respective powers under the Code, the Board has adopted and Brzeczek has promulgated General Order 80–3, Item II B.6, which provides for summary punishment for the:

failure of a sworn member to be clean shaven or to have hair neatly cut, unless otherwise authorized by the unit commanding officer. (A mustache is permitted if neatly trimmed, not excessively bushy, not extended below the lips and not curled. Sideburns will be neatly trimmed and will not extend below the ear. Beards are forbidden).

(f) Al-Islam's teachings provide that in keeping with the practices of the Prophet Muhammad, an Imam should let his facial hair grow as a sign of his religious understanding and his willingness and ability to assume his responsibility in the religious community.

(g) Upon his maturation in the role of Imam and as a sign of his religious understanding and his willingness and ability to assume his responsibility in the religious community, Sharif commenced shortly before September 29, 1981[1] to allow his facial hair to grow into a neatly and closely trimmed goatee beard of less than ¼ inch in length. On September 29 Sharif reported to work at the Area One headquarters wearing this beard. Upon inquiry by his supervisors, Hensley and Hoke, Sharif explained that he had grown the beard in response to a requirement of the religion of Al-Islam. Hensley and Hoke ordered Sharif to shave and told him not to report to work again with a beard. Because of his religious convictions, Sharif continued to report to work with his beard.

(h) Between September 29 and October 21 Sharif was not permitted to work and was not paid. During that period:

(1) About October 7 Sharif received a written memorandum from Murphy ordering him to shave his beard and report for duty and stating that Sharif would be in violation of Department Rule 6 if he failed to obey the order.

(2) Sharif reported to work wearing the beard on October 8, 9, 10 and 11. On each day he was sent home without pay. On October 12 Sharif stopped reporting to work.

(i) On October 21 Sharif was notified by Brzeczek that Sharif was suspended for 30 days and that charges would be filed with the Board seeking Sharif's discharge for failure to obey the orders to have his beard shaved. Sharif's police badge, shield and identification card were taken from him.

---

1. All other dates without year designations were also during 1981.

(j) On November 20 Brzeczek filed charges with the Board, seeking Sharif's discharge from the Department. On December 3 the Board hearing on Brzeczek's charges was continued to January 7, 1982, at the request of the Department.

(k) On December 31, having been notified by the Department that it would not be ready to proceed to a hearing January 7, 1982, Sharif filed his Complaint in this action, together with a Motion and supporting Memorandum seeking a temporary restraining order. This Court held hearings, during which the Court obtained assurances from defendants that the Board hearing would be held January 7, 1982 and the Board's written ruling would be issued by January 15, 1982. This Court therefore denied preliminary injunctive relief without prejudice to renewal of Sharif's motion in the event of an adverse decision by the Board.

(*l*) On January 7, 1982 the Board held its hearing. On January 14, 1982 the Board issued its ruling suspending Sharif from October 22 to December 20. However the Board's ruling did not determine Sharif's current status (thereby leaving him subject to continuing suspension or removal), nor did it refer to or consider Sharif's constitutional claims.

(m) No evidence was introduced by defendants at the hearing before this Court as to the basis or justification for the Department's prohibition against beards. Moreover, the Department has not consistently applied that ban. In *Daniels*, the City and the Department have avoided a motion for a temporary restraining order against the prohibition by agreeing not to enforce it against any police officer who suffers from a medically documented condition of pseudofolliculitis barbae (a genetic condition of skin irritation and infection resulting from shaving).

(n) All defendants' actions were taken under color of law.

4. Sharif has established a reasonable likelihood of ultimate success on the merits of his claim of violation of his right to free exercise of religion under the First Amendment.[2] There is no question in this case of the sincerity of Sharif's religious beliefs, and defendants have the burden to justify the encroachment on those beliefs by establishing a compelling governmental interest in the ban on beards. *Thomas v. Review Board*, 450 U.S. 707, 718, 101 S.Ct. 1425, 1432, 67 L.Ed.2d 624 (1981); *Elrod v. Burns*, 427 U.S. 347, 362–63, 96 S.Ct. 2673, 2684, 49 L.Ed.2d 547 (1976) (articulating standards applicable to any significant impairment of First Amendment rights). *Accord, Menora v. Illinois High School Association*, 527 F.Supp. 637 (N.D.Ill.1981). At this Court's hearing and during oral argument, counsel for the defendants stated (although no proof was introduced) that the Department's ban on beards is based on its interests in uniformity of appearance, esprit de corps and discipline. This Court will not take judicial notice of those reasons, as courts often effectively do in determining whether there is a rational basis for legislation (when that is the appropriate standard for determining constitutionality). But even if the Court were to accept those reasons as the basis for the prohibition on beards, the agreed order entered into by the City in *Daniels* subverts defendants' arguments. In light of the high value accorded First Amendment rights in our system of law, defendants' willingness to agree to the non-enforcement of the prohibition of beards against a large number of police officers for medical reasons precludes defendants from asserting that they have a compelling governmental interest in banning Sharif's growth of a minimal beard for bona fide religious reasons. All the asserted interests referred to in this paragraph are impaired just as much (or just as little) by permitting a beard for one reason as for another.

2. In accordance with common usage, this order refers to the First Amendment, though more accurately all Sharif's rights are asserted under the Fourteenth.

5. Sharif has also established a reasonable likelihood of success as to his claim based on the Fourteenth Amendment's Equal Protection Clause. By its agreement in *Daniels* the City has granted an exception to the ban on beards in favor of a substantial group of police officers. To deny such an exception to Sharif (whose unchallenged bona fide religious needs are as legitimate a reason for the growth of a beard as the medical needs of other police officers) may reasonably be viewed as constituting an impermissible denial of equal protection of the law. *Niemotko v. Maryland*, 340 U.S. 268, 71 S.Ct. 325, 95 L.Ed. 267 (1951).

6. If this preliminary injunction does not issue, Sharif will be irreparably injured by the past and continued enforcement of the ban on beards, for which injury there is no adequate remedy at law. Under the Board's decision he has been suspended for 60 days, with no determination of his status after December 20. Murphy has told him he will not be allowed to work as long as he wears a beard. Deprivation of his employment by reason of his exercise of First Amendment rights constitutes irreparable injury. *Elrod v. Burns*, 427 U.S. at 373–74, 96 S.Ct. at 2689–2690; *cf. Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968).

7. Paragraph 6 identifies the serious harm to Sharif if this Court were not to enjoin defendants' enforcement of the ban on beards against Sharif. Defendants have shown by the actions of the City and the Department in *Daniels* that they will not suffer any material harm if a preliminary injunction is entered.

8. This preliminary injunction will serve the public interest by vindicating constitutional rights. There has been no showing of any respect in which it will disserve the public interest.

9. Defendants have waived the requirement under Fed.R.Civ.P. ("Rule") 65(c) that Sharif give security for payment of any costs or damages if defendants were found to have been wrongfully enjoined or restrained.

It is therefore ordered that:

1. Defendants, their officers, agents and employees are enjoined and ordered to cease and desist from:

(a) enforcing the shaving requirement of Chicago Police Department General Order 80–3, Item II, B.6 (the "Order") as it applies to Sharif;

(b) prohibiting Sharif from working in his capacity as a Detective for the Chicago Police Department by reason of his non-compliance with the Order or any order based upon such non-compliance; and

(c) withholding Sharif's salary by reason of his non-compliance with the Order or any order based upon such non-compliance.

2. For the reasons stated in Finding 9, the requirement of Rule 65(c) for the giving of security for payment of any costs and damages that may be incurred or suffered by defendants if they are found to have been wrongfully enjoined or restrained is waived.

3. This preliminary injunction will remain in effect until further order of this Court.

4. Service of a copy of this preliminary injunction (together with a copy of the Complaint if Sharif so elects) shall be made forthwith by a United States Deputy Marshal or by any person employed by the law firm of James P. Chapman and Associates, Ltd., in any manner provided for in the applicable rules of Court. Proof of service shall be filed in this action.